IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SHERRY GONZALEZ, | § | |
| | § | |
| *Plaintiff* | § | SA-16-CA-00659-ESC |
| | § | |
| vs. | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| | § | |
| *Defendant* | § | |
| | § | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

This Order concerns Plaintiff Shirley Gonzalez's request for review of the administrative

denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social

Security Act ("SSA") and for Supplemental Security Income (SSI) under Title XVI of the SSA.

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to

42 U.S.C. § 405(g) and § 1383(c)(3).  The undersigned has authority to enter this Order as both

parties have consented to magistrate jurisdiction [#13, #15].  *See* 28 U.S.C. § 636(c)(1).  After

considering Plaintiff's Opening Brief [#18], Defendant's Brief in Support of the Commissioner's

Decision [#21], the transcript ("Tr.") of the SSA proceedings [#14], the other pleadings on file,

the applicable case authority and relevant statutory and regulatory provisions, and the entire

record in this matter, the Court finds that substantial evidence supports the Commissioner's

decision finding Plaintiff not disabled, and that no reversible legal error was committed during

the proceedings.  The Commissioner's decision is accordingly **AFFIRMED**.

## I.     Factual Background

Plaintiff Sherry Gonzalez filed her applications for DIB and SSI on January 28, 2013,

alleging a disability onset date of December 17, 2012.  (*See* Tr. 150-157.)  Plaintiff was 50 years

old on the date she alleges she became disabled, and was 52 years old at the time of Administrative Law Judge's decision. (Tr. 25.) Plaintiff has a high school education, possesses a certification as a nurse's aide, and has prior work experience as a certified nurse's aide and as an assistant manager in retail. (Tr. 25-26.)

Plaintiff alleged the following impairments in her initial claim for disability: high blood pressure, chronic obstructive pulmonary disease ("COPD"), asthma, back and knee problems, stomach problems, and knee problems. (Tr. 63.) Plaintiff's claims were initially denied on April 19, 2013 and, upon reconsideration, on June 20, 2013. (Tr. 111, 121.) Following the denial of her claim, Plaintiff requested an administrative hearing. (Tr. 9). Plaintiff and her attorney attended the administrative hearing before Administrative Law Judge ("ALJ") Ben Barnett on September 17, 2017. (Tr. 35-62.) Plaintiff and vocational expert ("VE") Jesus Duarte testified at the hearing. (*Id.*) [1]

The ALJ denied Plaintiff's claim for DIB and SSI benefits on January 20, 2015. (Tr. 10-27.) The ALJ found that Plaintiff met the insured status requirements of the SSA, and accordingly, applied the five-step sequential analysis required by the SSA regulations. At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 17, 2012.[2] (Tr. 15.) At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine status post hemilaminotomy and microdiscectomy; degenerative joint disease of the knees status

---

[1] At the hearing, Plaintiff also alleged left shoulder pain, hip pain, neck pain, hypertension, pre-diabetes, and plantar fasciitis, but did not claim any gastrointestinal issues or mental impairments. (Tr. 38, 48.)

[2] While Plaintiff returned to work as a certified nurse's aide after her alleged disability onset date and continues to work twelve to fifteen hours per week, the ALJ found that this work did not rise to the level of substantial gainful activity. (Tr. 15.)

post right total knee arthropathy and revision; obesity; osteoarthritis; and COPD. (Tr. 15-16.) However, the ALJ found that Plaintiff's plantar fasciitis and mental impairments of adjustment disorder with depressed mood, generalized anxiety disorder, post-traumatic stress disorder, and a history of alcohol abuse were not severe. (Tr. 16-17.) At step three, the ALJ found that none of these impairments met or medically equal the impairments of one of the listed impairments in the applicable Social Security Regulations. (Tr. 18.)

Before reaching step four of the analysis, the ALJ found that Plaintiff retained the physical and mental residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following exceptions: standing and/or walking limited to two hours in an eight hour day; only occasional climbing of ramps/stairs; never climb ladders, ropes or scaffolds; frequently balance; only occasional stooping, kneeling, crouching, and crawling; limited to frequent bilateral overhead reaching; and is to avoid concentrated exposure to irritants (fumes, odors, dusts, gases, and poor ventilation). (Tr. 18-25.) In making this finding, the ALJ determined that while Plaintiff possessed medically determinable severe impairments, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible." (Tr. 20-24.) The ALJ also declined to afford Plaintiff's primary care provider's opinion substantial and controlling weight, finding that her opinions regarding Plaintiff's physical limitations were primarily based upon Plaintiff's subjective assessments regarding her abilities and limitations and were not supported by the provider's objective findings or by the medical record. (Tr. 24-25.)

At step four, after considering the RFC and the testimony of the VE, the ALJ determined that Plaintiff was unable to perform her past relevant work. (Tr. 25.) At step five, however, the ALJ found that considering Plaintiff's age, educational factors, prior work experience, and RFC,

as well as the testimony of the VE, she could perform other work existing in significant numbers in the national economy including: diet clerk (DOT 245.587-010), outpatient administrative clerk (DOT 205.362-080), and billing clerk (DOT 214.362-042). (Tr. 26.) Accordingly, the ALJ determined that Plaintiff was not disabled for purposes of the Act, and therefore was not entitled to receive either DBI or SSI. (*Id.*)

Plaintiff requested review of the ALJ's finding, but the Appeals Council denied her request for review on May 12, 2016. (Tr. 1-4.) On July 1, 2016, after exhausting all administrative remedies, Plaintiff timely filed suit, seeking review of the administrative determination [#1].

## II. Governing Legal Standards

### A. Standard of Review

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner's decision applied the proper legal standards and is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). A court should weigh four elements in determining if substantial evidence supports the Commissioner's determination: (1) the objective medical facts; (2) the diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work experience. *Martinez*, 64 F.3d at 174. "'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th

Cir. 1988) (quoting *Hames*, 707 F.2d at 164). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not the court, to resolve. *Id.*

While substantial deference is afforded the Commissioner's factual findings, the ALJ's legal conclusions, and claims of procedural error, are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 235 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995); *Carr v. Apfel*, 133 F. Supp. 2d 476, 479 (N.D. Tex. 2001).

**B.      Entitlement to Benefits**

The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled only if her physical or mental impairment or impairments are so severe that she is unable to do his previous work, and cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy— regardless of whether such work exists in the area in which she lives, whether a specific job vacancy exists, or whether she would be hired if she applied for work. 42 U.S.C. §§ 423(a)(1), 1382c(a)(3)(B).

**C.      Evaluation Process and Burden of Proof**

SSA regulations require that disability claims be evaluated according to a five-step process. *See* 20 C.F.R. §§ 404.1520, 416.920. In the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).

"Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452–53 (citing 20 C.F.R. § 404.1572(a)–(b)). An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of her medical condition or her age, education and work experience. 20 C.F.R. § 404.1520(b).

The ALJ then determines whether the claimant has a medically determinable physical or mental impairment that is severe or a combination of impairments that is severe under the second step. 20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (internal quotation omitted). An individual who does not have a "severe impairment" will not be found to be disabled. 20 C.F.R. § 404.1520(c).

Under the third step, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 ("the Listings") of the regulations will be considered disabled without the consideration of other vocational factors. 20 C.F.R. § 404.1520(d). If the claimant does not qualify under the Listings, the evaluation continues to the fourth step. Before commencing the fourth step, however, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is a "multidimensional description of the work-related abilities" a claimant retains despite medical impairments. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. *See also* 20 C.F.R. § 404.1520(e); *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).

At the fourth step, the ALJ reviews the RFC assessment and the demands of her past relevant work. 20 C.F.R. § 404.1520(f). If an individual is capable of performing the work she has done in the past, a finding of "not disabled" will be made. *Id.* If an individual's impairment precludes her from performing her past relevant work, the fifth and final step evaluates the claimant's ability, given her residual capacities, her age, education, and work experience, to do other work. 20 C.F.R. § 404.1520(g). If an individual's impairment precludes her from performing any other type of work, she will be found to be disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the evaluation process. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical–Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that she is unable to perform that work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III.   Analysis

Plaintiff complains that the ALJ erred in two different ways. First, Plaintiff argues that the ALJ failed to analyze evidence of the treating physician's opinion in accordance with the Social Security regulations, Fifth Circuit precedent, and Agency policy. Second, Plaintiff challenges the ALJ's credibility finding as improper and contends it is based on a factually

inaccurate analysis.  The Court disagrees.  As is explained below, the ALJ properly analyzed the opinion of Plaintiff's treating physician in accordance with applicable law and did not err in assessing Plaintiff's credibility.

### A. The ALJ did not err in declining to give substantial or controlling weight to Plaintiff's primary-care provider's opinion.

Generally, "an evaluation by the claimant's treating physician should be accorded great weight" but only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence."  *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting 20 C.F.R. § 404.1527(d)(2)).  Thus, a treating physician's opinion is not conclusive, and such opinions "may be assigned little or no weight when good cause is shown."  *Newton*, 209 F.3d at 455–56.  "Good cause" exists for discounting the weight of a treating physician's opinion where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.  *Id.*  An ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the treating physician's opinion is not credible because the physician is "leaning over backwards to support the application for disability benefits."  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  Accordingly, the "ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Martinez*, 64 F.3d at 176 (treating physician's opinion that plaintiff was totally disabled was not entitled to controlling weight because the physician failed to provide a medical explanation for his opinion, and the opinion was inconsistent with the opinions of two other physicians, both of whom based their opinions on clinical test results).

In a February 25, 2013 Medical Opinion Questionnaire, Plaintiff's primary-care provider, Dr. Melba Beine, opined that Plaintiff had several functional limitations, including that she: is

limited to sitting or standing and walking less than two hours in an eight hour day; requires breaks every thirty minutes for ten to fifteen minutes; can occasionally lift ten pounds; is limited in handling, manipulating, and reaching; and can occasionally twist and climb stairs but can never stoop, crouch, or climb ladders. (Tr. 552-554.) Dr. Beine also opined that Plaintiff's impairments or treatment would cause her to be absent twice a month from work. (Tr. 554.)

In reaching his conclusion[3] that Dr. Beine's opinion's regarding Plaintiff's functional limitations should be afforded little weight, the ALJ noted inconsistencies between the doctor's proffered opinions regarding Plaintiff's limitations and statements Dr. Beine herself made during an examination of Plaintiff that the doctor had conducted just one week prior to completing the questionnaire. (Tr. 25.) According to her treatment notes, during the earlier exam, Dr. Beine concluded that Plaintiff's lumbar and left leg pain had improved after surgery and her examination revealed that Plaintiff had normal strength, mild crepitus, no obvious foot drop or steppage gait, and only mild tenderness to the spine. (Tr. 538-39.) The ALJ further discounted Dr. Beine's opinion because at the time she prepared the questionnaire proffering her testimony regarding Plaintiff's limitations, the doctor did not have access to later medical evidence that showed Plaintiff had more recently reported only occasional back pain to other medical providers. (Tr. 25) (citing Tr. 587.) Accordingly, the ALJ concluded that Dr. Beine's opinion regarding Plaintiff's physical limitations "is not supported by her [Dr. Beine's] objective findings nor those of any other medical source." (Tr. 25.)

---

[3] While the ALJ did not specify the exact weight he afforded Dr. Beine's opinion regarding Plaintiff's limitations, he specifically declined to provide Dr. Beine's opinion substantial or controlling weight. (Tr. 25.) ("Dr. Beine's opinion regarding the claimant's physical limitations has not been provided substantial or controlling weight.")

Plaintiff argues that the ALJ erred in three different ways when analyzing Dr. Beine's opinion. First, Plaintiff contends that the ALJ erred by failing to analyze each of the six factors set forth in 20 C.F.R. § 404.1427(c) and 416.927(c) ("*Newton* factors"). Second, Plaintiff contends that the ALJ selectively picked evidence to contradict Dr. Beine's opinion when, in fact, the totality of the medical record is consistent with Dr. Beine's opinion. Third, Plaintiff contends that the reasons provided by the ALJ in rejecting Dr. Beine's opinion regarding Plaintiff's limitations are factually inaccurate. For the reasons discussed below, the ALJ did not err in declining to give substantial or controlling weight to Dr. Beine's opinion regarding Plaintiff's physical limitations.

### 1. The ALJ was not required to perform an analysis of each of the *Newton* factors.

Plaintiff first contends that the ALJ erred by failing to analyze each of the six *Newton* factors. (Pl. Br. 12.) Under the SSA Regulations, unless the ALJ gives controlling weight to the treating provider's medical opinion, the ALJ should consider all of the following factors when deciding what weight to give the medical opinion: (1) length of treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability; (5) consistency; and (6) specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). The Fifth Circuit usually requires remand if an ALJ, prior to concluding that a treating specialist's opinion should not be given any weight, failed to analyze each of the six *Newton* factors. *Newton*, 209 F.3d at 456. Notwithstanding the foregoing, "ALJs are not required to consider the § 404.1527(c) factors before dismissing a treating physician's opinion if there is competing first-hand medical evidence contradicting that opinion." *Jones v. Colvin*, 638 Fed. App'x 300, 304 (5th Cir. 2016); *see also Holifield v. Astrue*, 402 Fed. App'x 24, 27 (5th Cir. 2010) (ALJ had no obligation to perform a detailed analysis of the six *Newton* factors before rejecting the treating physician's

opinion because the record was replete with reliable medical evidence from other treating physicians controverting this opinion).

In this case, the ALJ determined that Dr. Beine's opinion was controverted by Dr. Beine's own progress notes as well as evidence from other physicians who had subsequently examined Plaintiff. Thus, because this was a case where competing first-hand medical evidence contradicted the treating physician's opinion, the ALJ was not required to analyze each of the *Newton* factors in evaluating whether to accord controlling or substantial weight to Dr. Beine's opinion.

**2. Substantial evidence supports the ALJ's decision that Dr. Beine's opinion was inconsistent with the medical record.**

Plaintiff next argues that the ALJ selectively picked evidence to contradict Dr. Beine's opinion and, in fact, the totality of the medical record is consistent with Dr. Beine's opinion regarding Plaintiff's physical limitations. (Pl. Br. at 14). Plaintiff asserts that even if the ALJ doubted the severity of her impairments or symptoms, the ALJ was obligated to first ensure that the administrative record was more fully and fairly developed before denying her claim. (Pl. Br. at 16.)

Plaintiff is correct that in evaluating a claim for disability benefits, an ALJ "must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). But here, Plaintiff is mischaracterizing the ALJ's resolution of conflicting evidence as improper "picking and choosing" of the evidence. Substantial evidence from subsequent treating physicians supports the ALJ's finding that Plaintiff's impairments and pain had improved post-surgery and treatment. Prior to concluding that Dr. Beine's opinion should not be afforded substantial or controlling weight, the ALJ spent several pages in his opinion analyzing treatment notes from various other

treating providers whose progress notes revealed that Plaintiff possessed a fairly normal or, at most, "mild" antalgic gait and that she had a normal range of motion and stability in her knees— evidence that conflicts with the severe functional limitations set forth by Dr. Beine.  (*See* Tr. 20-25; *see also* Tr. 453, 580, 638, 779.)

The ALJ acted appropriately in weighing competing evidence and resolving conflicts. "The role of the ALJ as finder of fact is to consider and weigh the evidence."  *Hall v. Barnhart*, 31 Fed. App'x 839, 2002 WL 261528, at *1 (5th Cir. 2002).  "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve."  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).  Substantial evidence supports the ALJ's decision that Dr. Beine's opinion was inconsistent with the medical record, and the ALJ was "not required to recite every scrap of evidence which the claimant consider[ed] helpful to her case."  *Barnhart,* 31 Fed. App'x at 839.

### 3. The ALJ did not err in inferring that Dr. Beine based her opinion upon Plaintiff's subjective allegations.

Finally, Plaintiff argues that the reasons provided by the ALJ in rejecting Dr. Beine's opinion regarding Plaintiff's limitations are factually inaccurate.  (Pl. Br. at 13-16.)  Specifically, Plaintiff argues that there is nothing in the record to support the ALJ's conclusion that "Dr. Beine's treatment notes of February 15, 2013 reflect that this assessment was not based upon an evaluation but reflected the claimant's allegations." (Tr. 25.)  Plaintiff argues that the ALJ's conclusion is thus speculative and that it impermissibly relies upon the ALJ's own lay interpretation of medical data.  (Pl Br. at 16.)

Plaintiff is correct that nowhere in Dr. Beine's February 25th questionnaire does Dr. Beine specifically explain that her statements regarding Plaintiff's functional limitations were based upon Plaintiff's own assessment of her limitations and abilities as opposed to the doctor's physical exam.  But the ALJ noted that Dr. Beine's treatment notes from a physical exam

conducted one week prior indicated that Plaintiff had fewer and less severe physical limitations than those noted in the questionnaire. (Tr. 25) (explaining that Dr. Beine noted in her February 15th treatment notes that Plaintiff's "back problem improved with surgery and examination revealed normal strength, mild crepitus, no obvious foot drop, and only mild tenderness to the spine"). Thus, inconsistencies between Dr. Beine's February 15th treatment notes and Dr. Beine's opinions in the February 25th questionnaire regarding Plaintiff's alleged physical limitations led the ALJ to infer that the physical limitations that the doctor described in the questionnaire must have been based primarily on Plaintiff's own assessment of her perception of her limitations and abilities. An ALJ is entitled to draw inferences and conclusions from the evidence. *Crescent Towing & Salvage Co. v. Collins*, 228 Fed. App'x 447, 449 (5th Cir. 2007). Regardless, because the ALJ's findings are supported by substantial evidence (as discussed above), "they are conclusive and must be affirmed." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

**B. The ALJ did not err in assessing Plaintiff's credibility.**

Part of the role of an ALJ is to assess the credibility of the claimant. In evaluating a claimant's credibility, the ALJ must consider the objective expert medical evidence as well as the following factors:

1.  the individual's daily activities;

2.  the location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.  factors that precipitate and aggravate the symptoms;

4.  the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.  treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

13

6. any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and

7. any factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *see also Salgado v. Astrue*, 271 F. App'x 456, 462 (5th Cir. 2008) (citing SSR 96-7p). In considering these factors, "[t]he ALJ is not required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." *Giles v. Astrue*, 433 F. App'x 241, 249 n. 30 (5th Cir. 2011). As long as it is supported by substantial evidence, the ALJ's determination of credibility is entitled to deference. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

While acknowledging that courts afford deference to an ALJ's credibility determinations, Plaintiff argues that the ALJ improperly assessed her credibility in three different respects. First, Plaintiff argues that the ALJ failed to take into account Plaintiff's strong work history. Second, Plaintiff argues that the ALJ inaccurately characterized Plaintiff's part-time work activity and relied upon the inaccurate characterization to discredit Plaintiff's testimony. Third, Plaintiff alleges that the ALJ misconstrued as inconsistent Plaintiff's various statements regarding activities of daily living. For the reasons discussed below, there is substantial evidence to support the ALJ's credibility determination. Accordingly, the ALJ's decision regarding Plaintiff's credibility is entitled to deference.

**1. The ALJ did not err in how he considered Plaintiff's work history when making his credibility determination.**

Plaintiff cites to 20 C.F.R. 404.1529(c), SSRs 96-8p and 96-7p, and three out-of-Circuit to support her contention that the ALJ erred when he failed to specifically mention Plaintiff's strong work history as part of his credibility analysis. (Pl. Br. at 17-18.) The Commissioner,

however, argues that "[t]here is no Social Security regulation or Fifth Circuit case law that holds to this standard, which essentially requires the finder of fact to award an extra measure of credibility for having been a good and faithful employee." (Comm'r Br. at 9.) The ALJ was not required to specifically consider Plaintiff's lengthy work history in his credibility analysis or to give it weight.

SSR 96-7p requires credibility assessments to be made on all the evidence in the record, including "prior work record and efforts to work." SSR 96-7p, 1996 WL 374186, at *5. SSR 96-8p also identifies "[e]vidence from attempts to work" as a factor to consider when assessing a claimant's RFC. SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). Additionally, the SSA Regulations provide that in evaluating symptoms, including pain, the ALJ "will consider all of the evidence presented, including information about your prior work record." 20 C.F.R. § 404.1529(c)(3). Courts outside the Fifth Circuit have noted that when the record contains evidence of a strong work history, that evidence should bolster the plaintiff's credibility regarding the plaintiff's own assessment of his or her work capabilities. *See, e.g., Taybron v. Harris*, 667 F.2d 412, n. 6 (3d Cir. 1981) ("[W]hen the claimant has worked for a long period of time, his testimony about his work capabilities should be accorded substantial credibility."); *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (holding that in evaluating the credibility of the testimony and complaints, "[t]he adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record").

While the Fifth Circuit has not expressly addressed whether an ALJ is required to consider a plaintiff's lengthy work history as bolstering evidence of a plaintiff's credibility, some district courts in the Fifth Circuit, including in this District, have rejected imposing this requirement on the ALJ. *See, e.g., Myers v. Colvin*, No. EP-16-CV-0033-DCG-(LS by consent), 2016 WL 6069506, at *3 (W.D. Tex. Oct. 14, 2016) (rejecting plaintiff's argument that an ALJ errs when failing to consider plaintiff's excellent work history and noting that none of the cases cited by plaintiff to support this position— *Taybron*, *Rivera*, and *Polaski*— were binding on the court); *Brown v. Comm'r of Soc. Sec.*, No. 5-0-cv-11 (E.D. Tex. Feb. 14, 2013) (Dkt. No. 22*), report and recommendation adopted*, (Dkt. No. 24) (noting that *Rivera* and a later Eighth Circuit opinion are not binding on this court, and that "the Court has not identified a controlling Fifth Circuit case requiring consideration of 'excellent work history' in determining a plaintiff's credibility"); *McGee v. Astrue*, No. 2:10-CV-1826, 2012 WL 7456174, at *8 (W.D. La. Nov. 26, 2012), *report and recommendation adopted*, No. 2:10-CV-1826, 2013 WL 704624 (W.D. La. Feb. 26, 2013) (rejecting plaintiff's argument that the ALJ erred in failing to consider plaintiff's long work history when assessing credibility because "a claimant's work history is but one factor to consider when evaluating plaintiff's symptoms," and "the Fifth Circuit has not adopted the rule of law cited by plaintiff and espoused in the Second and Third Circuits.")

Regardless of whether an ALJ is required to consider or give bolstering weight to a plaintiff's long or excellent work history, the ALJ was aware of the evidence of Plaintiff's work history, as indicated by his finding that Plaintiff had past relevant work as an assistant manager in retail and as a certified nurse's aide. (Tr. 25). In analyzing Plaintiff's credibility, the ALJ does not specifically mention Plaintiff's prior work history, suggesting that her work history did influence his analysis of her credibility positively or negatively. The ALJ was not required to

"mechanically follow every guiding regulatory factor" in articulating reasons for declining to give Plaintiff's work history weight in his credibility analysis. *See Clary v. Barnhart*, 214 Fed. App'x 479, 482 (5th Cir. 2007) (ALJ did not err in failing to expressly consider each of the seven 20 C.F.R. § 404.1529(c)(3) factors when rejecting plaintiff's testimony as not credible; no prejudice stemmed from the ALJ's failure to address each regulatory factor, and an "ALJ is *not* required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility"); *see also Undheim v. Barnhart*, 214 Fed. App'x 448, 451 (5th Cir. 2007) ("An ALJ is not required to follow formalistic rules when articulating the reasons for his credibility determination"). Here, the ALJ provided sufficient reasons and cited to specific evidence to support his finding that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms was "not entirely credible."

In assessing Plaintiff's credibility, the ALJ analyzed the following evidence: various medical records suggesting that Plaintiff improved with surgery and treatment, Plaintiff's reports of good daily activities, Plaintiff's current part-time work activity, and the fact that Plaintiff has gone for relatively long periods of time without bothering to refill prescribed medications. (Tr. 20-24.) This substantial evidence supports the ALJ's determination regarding Plaintiff's credibility. *See Pineda v. Astrue*, 289 Fed. App'x 710, 714 (5th Cir. 2008) ("In judging the claimant's credibility, the ALJ can consider such things as medical reports, the claimant's daily activities, and the medications the claimant is taking."). Thus, even if the ALJ did not but should have specifically considered and given weight to Plaintiff's lengthy work history when evaluating her credibility, the ALJ's failure to specifically does not constitute reversible error. *See Falco v. Shalala,* 27 F.3d 160, 164 (5th Cir. 1994) (the fact that the ALJ "did not follow formalistic rules in his articulation [that plaintiff's subjective complaints were exaggerated and

not credible] compromises no aspect of fairness or accuracy that this process is designed to ensure."); *B.G. v. Comm'r of Soc. Sec. Admin.*, No. CIV.A. 09-0685, 2010 WL 3282659, at \*7 (W.D. La. July 22, 2010), *report and recommendation adopted*, No. CIV.A. 09-0685, 2010 WL 3282663 (W.D. La. Aug. 17, 2010) (rejecting plaintiff's argument that the ALJ committed reversible error by failing to touch on all of the regulatory factors including the plaintiff's "excellent work history").

**2. The ALJ did not err in considering Plaintiff's ability to perform part-time work when assessing her credibility.**

Plaintiff also criticizes the ALJ for concluding that her part-time work activity is evidence that undermines her credibility as opposed to evidence that reflects her strong work ethic. Plaintiff claims that her ability to perform part-time work is not indicative of her ability to perform sustained full-time work activity and emphasizes that she is not even able to perform the full duties of her part-time position.

Plaintiff's arguments are not persuasive. First, the ALJ did not conclude that Plaintiff is able to perform medium-exertion work—the exertion level for a certified nurse's assistant. The evidence in the record is that less than a year after her alleged disability onset date, Plaintiff had been able to perform modified part-time work as a certified nurse's assistant, and that she was still able to as of the date of the hearing. In his decision, the ALJ noted Plaintiff's ability to perform part-time work, but nevertheless specifically found that Plaintiff, as of the date of his decision, was *unable* to perform *any* of her past relevant work as a certified nurse's aide; in fact, he concluded that she is limited to less than a full range of light-duty work. (Tr. 18, 25.) But in evaluating Plaintiff's credibility, the ALJ noted that Plaintiff's ability to perform even modified part-time work as a certified nurse's assistant indicated that her abilities and limitations in activities had at least at times, been somewhat greater than she generally reported. (Tr. 24.)

Evidence that a plaintiff has been able to work part-time work, even if it does not constitute substantial gainful activity, can be relevant in assessing a plaintiff's credibility. *Porche v. Astrue*, No. CIV.A. 11-555-JJB, 2013 WL 4046271, at *4 n. 10 (M.D. La. Aug. 8, 2013). District Courts in the Fifth Circuit have held that an ALJ does not err in finding a plaintiff's claim of disability not credible in light of the plaintiff's ability to perform part-time work despite the plaintiff's alleged disability. *See, e.g.*, *Silva v. Comm'r of Soc. Sec. Admin.*, No. 4:15-CV-5, 2016 WL 4486937, at *2 (E.D. Tex. Aug. 25, 2016) (rejecting plaintiff's argument that the ALJ and the Magistrate Judge's conclusions "penalized" her for working part-time because when determining a plaintiff's disability status, the ALJ is permitted to consider evidence plaintiff was able to hold a part-time job while at the same time alleging an inability to work); *Gachter v. Colvin*, No. 4:13-CV-168-Y, 2014 WL 2526887, at *10 (N.D. Tex. Jun. 4, 2014) ("While the part-time work referenced by the ALJ in his credibility determination was not substantial gainful activity, such activity further supports the ALJ's credibility finding that [plaintiff] was not as functionally limited as claimed."). Accordingly, the ALJ did not err in concluding that Plaintiff's ability to perform part-time work after her alleged disability onset date undermined her credibility.

### 3. The ALJ properly considered Plaintiff's conflicting statements regarding abilities and limitations in her activities of daily living when evaluating her credibility.

Finally, Plaintiff argues that the ALJ improperly concluded that Plaintiff's testimony regarding her activities of daily living ("ADL") was inconsistent with the ADLs she previously reported. Specifically, Plaintiff claims that the ALJ misunderstood a treatment note from Plaintiff's pulmonary clinic that states "no limitations in ADLs." Plaintiff alleges that the note, when read in context with other treatment notes by the same clinic, merely suggests that she has

"no breathing-related limitations in ADLs," and hence her testimony during the hearing is consistent with the record, including this treatment note. (Pl. Br. 19-20).

Even if the ALJ misconstrued the pulmonary clinic's notes to reflect that Plaintiff had reported no limitations in her ADLs during her visit to the pulmonary clinic, there is still substantial evidence in the record to support the ALJ's conclusion that Plaintiff's testimony regarding her limitations in her ADLs was inconsistent with treatment notes from Plaintiff's providers as well as Plaintiff's self-reported ADLs. For instance, in treatment notes from a September 24, 2014 evaluation by physical therapist Kathryn Wolters, Ms. Wolters noted that Plaintiff engaged in modified independent ADLs and that Plaintiff denied receiving home health services. (Tr. 802.) According to Wolters's notes, Plaintiff told her she required assistance from her daughter only with shopping, heavy lifting, and cleaning the house. (*Id.*) Additionally, even though Plaintiff testified during the hearing that she suffered from pain most of the day and night that prevented her from performing most ADLs, she contradicted herself when she testified at the hearing or stated in her Function Reports that she has the ability to prepare simple meals, do laundry, shop, wash dishes, walk daily (at least for short distances)[4], drive, and handle her finances. (Tr. 44-48; 192-93.) Accordingly, the ALJ did not err when he considered other contradictory statements by Plaintiff and other evidence in Plaintiff's medical records regarding Plaintiff's ability to perform ADLs when evaluating her credibility. *See Botsay v. Colvin*, 658 Fed. App'x 715, 719 (5th Cir. 2016) (a plaintiff's ability to perform daily activities such as

---

[4]Although the ALJ noted that Plaintiff reported walking two miles daily (Tr. 24), she specifically denied the ability to do so after her disability onset date. Rather, Plaintiff explained in her Function Report that prior to her disability onset date she "was walking two miles daily and cannot any more." (Tr. 194.) Even though Plaintiff may not be able to walk distance two-mile distance any longer, she still reported walking daily since her disability onset date for at least short distances without the assistance of a cane or walker. (Tr. 194-96.)

driving, executing some chores, and living alone can negatively impact credibility when the plaintiff's contention is that her disabilities are so severe so as to eliminate the possibility of even sedentary work).

## IV.    <u>Conclusion</u>

Based on the foregoing, substantial evidence supports the Commissioner's decision.  The Court therefore holds that the Commissioner's decision finding that Plaintiff is not disabled is **AFFIRMED**.

SIGNED this 12th day of June, 2017.

ELIZABETH S. ("BETSY") CHESTNEY
U.S. MAGISTRATE JUDGE